UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
DIANE WELLS-WILLIAMS

               Plaintiff,

                                                        NOT FOR PUBLICATION
        -against-                                 **MEMORANDUM & ORDER**

KINGSBORO PSYCHIATRIC CENTER         03-CV-134 (CBA)

               Defendant.
----------------------------------------------------------------X
AMON, UNITED STATES DISTRICT JUDGE

      Plaintiff Diane Wells-Williams, who is proceeding *pro se*, has filed suit against defendant Kingsboro Psychiatric Center ("Kingsboro"), pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et. seq. ("Title VII"). Plaintiff alleges discrimination in employment on the basis of race, gender, national origin, and religion. Plaintiff also alleges that she was sexually harassed. Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, defendant's motion is granted.

**I.    Background**

      Kingsboro Psychiatric Center, a psychiatric hospital in Brooklyn operated by the state Office of Mental Health, employed plaintiff as a cook from September 1993 until March 2005, when she resigned to accept a position with the New York City Department of Education. (Rule 56.1 St. at ¶¶ 1-4, 23.) Plaintiff alleges that during her time at Kingsboro, she was discriminated against on the basis of her race, gender, national origin, and religion. (Complaint at ¶ 7.) Plaintiff further alleges that she was sexually harassed. (Id. at ¶ 4.)

      Plaintiff complains of discriminatory treatment beginning in March of 1998. Specifically, she alleges that she was ordered to cook decomposed food by Christopher Fideli,

1

the Nutrition Services Administrator. (Pl. Aff. at ¶ 1.0.) In addition, plaintiff alleges that she complained to Fideli that she had not received the same knives as other cooks, and that Fideli never issued her these knives. (Complaint to New York State Division of Human Rights ("DHR Complaint") at ¶ 4; Pl. Aff. at ¶ 3.3.) Plaintiff further alleges that she was denied education leave by Fideli and that when she became ill and went to her supervisor to obtain permission to see a doctor, Fideli ran in and yelled at plaintiff.[1] (Id. at ¶¶ 9-10, 12.) Additionally, plaintiff alleges that she and Fideli were walking through a narrow corridor and Fideli put his hand around her shoulder for "less than a few seconds." (Id. at ¶ 5; Pl. Dep. at 65-67.)

In addition to her allegations about Fideli, plaintiff complains that Michael Williams, a food service worker employed by Kingsboro, discriminated against her. For example, plaintiff alleges that Williams used strong expletives and obscene remarks against her and made "obscene gestures . . . using a cucumber and tomatoes." (Pl. Aff. at ¶ 3.2 (i), (ii), (iv).) Furthermore, plaintiff alleges that Fideli and Williams used obscene language and discussed sexual topics on a regular basis. (DHR Complaint at ¶ 6.)[2]

On October 15, 1999, plaintiff filed a complaint with the New York State Division of

---

[1] On September 13 and 15, 1999, plaintiff wrote letters to the Executive Director at Kingsboro, complaining of this incident and stating (in the 9/13 letter only) that she was "sexually harassed" by Fideli. (See Hardy Aff. Exs. H, I.) On September 22, 1999, plaintiff again wrote to the Executive Director, complaining about, among other subjects not relevant to this case, her failure to be granted education leave. (See Hardy Aff. Ex. J.) On October 21, 1999, Joyce Rembert, plaintiff's supervisor, sent plaintiff a series of memos addressing plaintiff's complaints. (See Hardy Aff. Exs. M, N, O, P.) On October 27, 1999, plaintiff wrote to Rembert, stating that she was being sexually harassed by Fideli. Her specific complaints in this letter were that Fideli was "interfering with her work duties" and did not grant her education leave. (See Hardy Aff. Ex. R.)

[2] Between November 1998 and October 1999, Rembert sent Williams various memos about his attitude and language toward his coworkers. (See Hardy Aff. Exs. E, F, K.)

Human Rights ("DHR") alleging unlawful discriminatory practice because of national origin and sex in violation of New York State Human Rights Law, § 296 and Title VII of the Civil Rights Act of 1964. (DHR Complaint at ¶ 15.)[3] On August 15, 2002, DHR dismissed plaintiff's complaints and closed its file pertaining thereto, finding "no actionable sexual harassment under the New York State Human Rights Law" and no discrimination based on plaintiff's national origin. (Hardy Aff. Ex. W.) DHR's findings were adopted by the Equal Employment Opportunity Commission ("EEOC") on October 7, 2002. (See Hardy Aff. Ex. X.)

On January 8, 2003, plaintiff filed a *pro se* complaint in this Court alleging federal claims pursuant to Title VII, 42 U.S.C. § 2000e et. seq.

## II. Discussion

### A. Standard of Review

To prevail on a summary judgment motion, defendants must prove that no genuine issues of material fact exist. Fed. R. Civ. P. 56(c). The court's function is to determine whether there is a genuine issue to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). No triable issue of fact exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. Chertkova v. Conn. Gen'l Life Ins. Co., 92 F.3d 81, 86 (2d Cir. 1996). To defeat a summary judgment motion, the non-movant must offer materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

---

[3] On April 11, 2000, a conflict resolution meeting took place between plaintiff and Williams, where both parties acknowledged sharing responsibility for their disagreement. (Rule 56.1 St. at ¶ 16.)

Although summary judgment is not favored in discrimination cases when questions of the defendant's state of mind are at issue, Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000), "summary judgment [is] available to reject discrimination claims in cases lacking genuine issues of material fact." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 40 (2d Cir. 1994). "[T]he salutary purposes of summary judgment–avoiding protracted, expensive and harassing trials–apply no less to discrimination cases than to commercial or other areas of litigation." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).

In a motion for summary judgment, a *pro se* plaintiff's claims must be construed liberally, Sawyer v. Am. Fed'n of Gov't Employees, AFL-CIO, 180 F.3d 31, 36 (2d Cir. 1999) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)), and all factual inferences should be drawn in favor of the non-moving party. Bickerstaff v. Vassar Coll., 196 F.3d 435, 448 (2d Cir. 1999). Under the Local Rules of the United States District Court for the Eastern District of New York, summary judgment may be granted in a *pro se* case when (1) the plaintiff has received adequate notice that failure to respond may result in dismissal of the case and (2) the court determines that the facts as to which there is no genuine dispute show that the moving party is entitled to a judgment as a matter of law. See Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996); see also Fed. R. Civ. P. 56(e). Plaintiff received notice informing her of the nature and consequences of summary judgment required under Vital v. Interfaith Med. Ctr., 168 F.3d 615, 620-21 (2d Cir. 1999). Although plaintiff did not file a Rule 56.1 statement, she submitted an affidavit in opposition to defendant's motion for summary judgment.

**B.    Discrimination Claim**

Plaintiff alleges that she was discriminated against on the basis of gender.[4]  In order to make out a prima facie case of discrimination, a plaintiff must establish that: (1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she suffered an adverse employment action; and (4) the action occurred under conditions giving rise to an inference of discrimination.  Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).  If the plaintiff makes out a prima facie case of discrimination, and the defendant proffers a nondiscriminatory reason for the adverse employment action, the burden shifting established by McDonnell Douglas drops away.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000).  The question then becomes whether the evidence, viewed in the light most favorable to the plaintiff, is sufficient to sustain a reasonable finding that the adverse employment action was motivated at least in part by gender discrimination.  Tomassi v. Insignia Financial Group, Inc., 478 F.3d 111, 114-15 (2d Cir. 2007).  In this case, defendant fails to make out a prima facie case of discrimination.  She has not established that she suffered an adverse employment action and even if she had made such a showing, she has not established that the actions complained of occurred under conditions giving rise to an inference of gender discrimination.

To prove an adverse employment action, plaintiff must "endure a 'materially adverse' change in the terms and conditions of employment.  To be 'materially adverse' a change in

---

[4]  Although plaintiff's complaint alleges that she was discriminated against on the basis of race, gender, national origin, and religion, she has not set forth any facts suggesting that the alleged discrimination was motivated by her race, national origin, or religion, and her briefing to the Court focuses on her alleged exposure to "sexual harassment."  Accordingly, plaintiff is pursuing only allegations of gender discrimination.  In any event, since the record is completely devoid of any suggestions of discrimination based upon race, national origin, or religion, these claims, to the extent they remain in the complaint, are dismissed.

working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003).

Plaintiff alleges that the adverse employment actions she endured were her failure to receive certain knives and her failure to be granted education leave.[5] Plaintiff does not dispute that the knives she did receive were adequate for her to perform her duties. (See Pl. Dep. at 137.) Thus, plaintiff's failure to receive these knives was at most an inconvenience that did not rise to the level of being "materially adverse."

Similarly, the denial of education leave does not rise to the level of an adverse employment action, as it does not constitute a "materially adverse change in the terms and conditions of employment." First of all, plaintiff has failed to assert that she or her colleagues were entitled to education leave. Furthermore, although plaintiff alleges that the denial of her education leave may have affected her employability and promotional opportunities, she fails to explain how this is so. Accordingly, it cannot be said that the denial of education leave

---

[5] Plaintiff alleges for the first time in her Affidavit/Affirmation in Opposition to Defendant's Motion that she was not compensated for damage sustained to her car by the security gate at Kingsboro. (See Pl. Aff. at ¶ 4.) Since plaintiff failed to allege this in either her state DHR complaint, or her complaint in this Court, this incident will not be considered as part of plaintiff's discrimination claim. See Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001). In addition, in her complaint, plaintiff alleges that she did not receive pay for overtime which she was required to work. However, defendant disputed these facts in its summary judgment motion, and plaintiff did not reassert these claims or challenge defendant's position in her reply papers.

constituted an adverse employment action.  See, e.g., Beauchat v. Mineta, 2006 WL 2711608 (E.D.N.Y. Sept. 21, 2006) (rejection of plaintiff's requests for leave not materially adverse change in working conditions); Fridia v. Henderson, 2000 WL 1772779 (S.D.N.Y. Nov. 30, 2000) (treating defendant poorly, assigning her excessive work, and denying requests for leave with pay did not constitute adverse employment action); Baumgarten v. Ca. Bd. of Equalization, 2007 WL 161011 (N.D. Cal. Jan. 18, 2007) (denial of education leave not adverse employment action when no evidence that plaintiff or anyone else was ever entitled to it); but see Irdees v. Beth Israel Hosp., 2004 WL 2346666 (S.D.N.Y. Oct. 19, 2004) (Muslim plaintiff denied education leave suffered adverse employment action.).

Further, even if plaintiff had shown that failure to receive certain knives or denial of education leave were adverse employment actions, she has offered no evidence of circumstances giving rise to an inference of gender discrimination.  Plaintiff appears to rely on a disparate treatment argument in support of her contention that she was a victim of discrimination.  "A plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself."  Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) (internal citations and quotations omitted). However, plaintiff has failed to compare herself to any other employees, including male employees, with respect to the receipt of knives or education leave.  On the latter issue, she has not indicated whether other employees requested and were granted education leave and the specific circumstances in which they did so.  Accordingly, plaintiff has failed to show that she was "similarly situated" to other employees, yet treated differently.

Finally, even if plaintiff were able to make out a prima facie case of discrimination,

7

defendant appears to have had a legitimate, non-discriminatory reason for denying plaintiff's education leave. As plaintiff herself acknowledges, Fideli informed her that her education leave was denied because it conflicted with the days she was scheduled to work and because her work performance had been poor. (DHR Complaint at ¶ 9.)

Plaintiff has failed to make out a claim of sex discrimination and defendant is entitled to summary judgment on this cause of action.

### C. Hostile Work Environment Claim

Plaintiff also brings a hostile work environment claim, arguing that she was sexually harassed.[6] Under Title VII, a hostile work environment exists where "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal citations omitted). Proving a hostile work environment involves both objective and subjective elements, requiring a showing that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and that a specific basis exists for imputing the objectionable conduct to the employer. Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (internal quotations and citations omitted). In addition, a plaintiff must allege that

---

[6] A plaintiff alleging sexual harassment under Title VII can proceed under two theories: 1. "quid pro quo" and 2. "hostile work environment." See Meritor Sav. Bank v. Vinson, 477 U.S. 57, 64-65 (1986). To establish "quid pro quo" sexual harassment, a plaintiff must establish that "she was denied an economic benefit either because of gender or because a sexual advance was made by a supervisor and rejected by her." Kotcher v. Rosa & Sullivan Appliance Ctr., 957 F.2d 59, 61 (2d Cir. 1992) (citing Vinson 477 U.S. at 64-65). Here, plaintiff has made no allegation that she was denied an economic benefit because of gender or because of a rejected sexual advance.

8

the harassment was motivated by her race, gender, or other protected status.  See Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work . . . through subjection to a hostile work environment . . . is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic."); see also Brennan v. Metropolitan Opera Ass'n, 192 F.3d 310, 318 (2d Cir. 1999) ("[A]n environment which is equally harsh for both men and women or for both young and old does not constitute a hostile working environment under the civil rights statutes.").  It is the use of an individual's gender, race, or other protected status in setting the terms or conditions of employment that is Title VII's touchstone.  See Connecticut v. Teal, 457 U.S. 440, 453 (1982).

### 1. Objectively Hostile Work Environment

The factors considered in determining whether a work environment is objectively hostile include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [the] employee's work performance."  Harris, 510 U.S. at 23.  "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."  Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004) (citing Alfano, 294 F.3d at 374).  "However, a single act can create a hostile work environment if it in fact works a transformation of the plaintiff's workplace."  Id. (internal citations and quotations omitted).

To support her claim of hostile work environment, plaintiff points to specific incidents in her affidavit.  Plaintiff asserts that Fideli and Williams engaged in conversations with each other using obscene language on a regular basis.  In addition, she claims that on two occasions,

9

Williams used strong language and expletives against plaintiff and that on another occasion, he "made obscene gestures and language using a cucumber and tomatoes in a loud and abusive tone." Furthermore, plaintiff claims that on one occasion, Fideli made derogatory remarks toward plaintiff and that on another occasion, he put his arm around her shoulder for a few seconds while walking through a narrow hallway.[7] None of the incidents standing alone are severe enough to establish a hostile work environment.

Furthermore, even taken together, these incidents are not sufficiently "severe or pervasive" to establish an objectively hostile work environment. Alfano, 294 F.3d at 373 (finding no sex-based hostile work environment where plaintiff established at trial four incidents with overtly sexual overtones and eight incidents of allegedly discriminatory administrative and personnel decisions). While plaintiff claims that the obscene conversations between Fideli and Williams were continuous, she admits that the sexual conversations were never directed toward her. (Pl. Dep. at 189, 200.) In addition, while plaintiff asserts that she was uncomfortable and under "duress" during these conversations, she does not allege that Fideli and Williams' comments were personally insulting to her in any way, nor does she demonstrate that they were obviously intended to intimidate, ridicule, or demean her on account of a protected characteristic. See Harris, 510 U.S. at 21. Accordingly, plaintiff's allegations are more akin to "mere offensive utterance[s]" than "physically threatening or humiliating" conduct. Id. at 23. As in Alfano, the

---

[7] In her complaint, plaintiff alleges the following additional actions: (1) Fideli was not concerned about plaintiff's injured finger; (2) Williams "yelled at" plaintiff because plaintiff refused to make a snack; (3) Williams made disparaging remarks about people from the Caribbean. However, she fails to support these allegations through affidavits or other evidence. Plaintiff also alleges in her complaint that Fideli interrupted her meeting with a supervisor. However, in her affidavit, she appears to withdraw that allegation. (Pl. Aff. at ¶ 3.2.2.)

evidence at issue in this case falls "well below the threshold" of establishing a hostile work environment. 294 F.3d at 379. That is, drawing all inferences in plaintiff's favor, no rational juror could find that "the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [plaintiff's] employment were thereby altered." Id. at 373. Indeed, far more egregious cases than this have been found not to create a hostile work environment. See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998) (supervisor's comment about plaintiff's buttocks and "deliberately touch[ing her] breasts with some papers that he was holding in his hand" was not abuse of sufficient severity or pervasiveness as to alter the conditions of employment); Shepherd v. Comptroller of Pub. Accounts, 168 F.3d 871, 872-75 (5th Cir. 1999) (touching plaintiff, attempting to look down her shirt, and commenting about her anatomy did not create hostile work environment); Black v. Zaring Homes, Inc., 104 F.3d 822, 823-24 (6th Cir. 1997) (repeated sexual jokes and at least five sexually offensive remarks over four month period did not create hostile work environment); Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430-31 (7th Cir. 1995) (in a seven month period, nine sexually offensive incidents, including repeated references to plaintiff as a "pretty girl," grunting noises when she wore leather skirt, and one episode of simulated masturbation did not create hostile work environment); see also Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 354 (5th Cir. 2001); Hocevar v. Purdue Frederick Co., 223 F.3d 721, 735-36, 738 (8th Cir. 2000); Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1365-66 (10th Cir. 1997); Mendoza v. Borden, Inc., 195 F.3d 1238, 1248-49 (11th Cir. 1999), cert denied, 529 U.S. 1068 (2000).

### 2. **Discriminatory Intent**

In addition, even if plaintiff had established that she was subjected to a hostile work

environment, she has not established that the harassment was motivated by her gender, or other protected status. "[I]n order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex." Alfano, 294 F.3d at 374. "Facially neutral incidents may be included, of course, among the totality of the circumstances that courts consider in any hostile work environment claim, so long as a reasonable fact finder could conclude that they were, in fact, based on sex." Id. at 378. "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discriminat[ion] . . . because of . . . sex . . . ." Onacle v. Sundowner Offshores Servs., Inc., 523 U.S. 75, 80 (1998).

Although some of the conduct of which plaintiff complains had sexual overtones, the record contains no evidence that plaintiff, as a woman, was treated differently than any man. Furthermore, the record contains no evidence that Fideli or Williams ever objected to the presence of women in the workplace or that they questioned the ability of women to perform the job functions required of a cook. At best, the evidence here demonstrates that the work environment was equally unprofessional for both men and women.

In sum, plaintiff has failed to establish that the conduct of which she complains was sufficiently severe or pervasive to rise to the level of an objectively hostile work environment. Further, even if plaintiff had established a hostile work environment, she has failed to establish that it was motivated by her status as a member of a protected class. Accordingly, this Court grants defendant's motion for summary judgment on plaintiff's hostile work environment claim.

## **CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment in accordance with this Order and to close the case.

    SO ORDERED.

Dated: Brooklyn, New York
       March 30, 2007

                                                                              Carol Bagley Amon
                                                                              United States District Judge